UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY WOLFE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:17 CV 2942 CDP |
| | ) | |
| THE CITY OF TOWN AND | ) | |
| COUNTRY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM AND ORDER**

Plaintiff Jeffrey Wolfe is a police officer who works for the City of Town and Country Police Department. He brings this case under 42 U.S.C. § 1983 against the City of Town and Country, the City's Mayor, the members of the Board of Alderman, and the Chief of Police, all in their official capacities. He alleges that defendants violated his First Amendment rights of intimate association when they demoted him because of his relationship with another officer.

I will deny defendants' motion to dismiss. Wolfe has plausibly stated a claim that defendants violated his constitutional rights, and so at this early stage of the case the claim survives. He also sufficiently alleges that this was done as part of the official policy of the City of Town and Country, because the action was taken by the highest decision-makers and affirmed by the Board of Aldermen, which is the policy-making body of the City. I will strike the claim for punitive

damages as requested by defendants, which plaintiff does not oppose, but the case will proceed in all other respects.

## Background

Wolfe has been a police officer for the City of Town and Country for twenty-six years and a supervisor for the past twenty-two years. Complaint, ECF 1 at ¶ 12. Defendants are the City of Town and Country, the Board of Aldermen, the Mayor, and the Chief of Police. The individual defendants are sued in their official capacities. *Id.* at ¶ 2-7. In 2012, Wolfe was promoted to the rank of sergeant; before the alleged incident he had performed his duties satisfactorily. *Id.* at ¶ 12. In March 2017, an "unbecoming conduct complaint" was filed against Wolfe regarding allegations of a relationship with another Town and Country police officer. *Id.* at ¶ 13.

Wolfe was ordered to undergo a polygraph examination as part of the investigation. *Id.* at ¶ 13 and ¶ 14. In that test Wolfe was asked whether he and the subordinate officer had made plans for a vacation together and whether, "Prior to about four weeks ago," he had physical sexual contact with her, which he denied. *Id.* at ¶ 17 and ¶ 18. The polygraph examiner reported that in his opinion Wolfe had been truthful in his statements during the test. *Id.* at ¶ 19. The investigation of Wolfe concluded with a finding that he did not show preferential treatment to any officer. *Id.* at ¶ 22. In April 2017, Chief of Police Kranz

2

informed Wolfe that he was demoted to Corporal and his compensation was reduced. *Id.* at ¶ 20. Wolfe exercised his right of appeal to the Board of Aldermen, which affirmed the demotion. *Id.* at ¶ 24-27.

Wolfe alleges that he did not engage in a relationship with the other officer while he was the officer's supervisor. *Id*. at ¶ 23. He alleges that his actions did not violate any Town and Country policy or regulation regarding workplace fraternization. *Id.* at ¶ 28 and 30. Wolfe further alleges that the defendants demoted him under color of state law and this action was a final policy or was approved by those with final policy-making authority. *Id*. at ¶ 36.

## Discussion

The purpose of a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., is to test the legal sufficiency of the complaint. When considering a Rule 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in favor of the plaintiff. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). Rule 8(a)(2), Fed. R. Civ. P., provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, the Supreme Court clarified that under Rule 8(a)(2) a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

Specifically, to survive a motion to dismiss, a complaint must contain enough factual allegations, accepted as true, to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570. I must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but I am not required to accept the legal conclusions the plaintiff draws from the facts alleged. *Id*. at 555; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).

Defendants argue that a police officer has no constitutional right to intimate association with another officer in an off-duty relationship. They additionally argue that even if there is such a right, municipal liability cannot be imposed here because Wolfe has not alleged a governmental policy that caused him injury. Finally, defendants argue that any infringement on Wolfe's constitutional rights is outweighed by the governmental interest in maintaining an orderly, safe, efficient, fair and trusted police department.[1] ECF # 17 at p. 9.

To state a plausible § 1983 claim, a plaintiff must allege "a violation of a constitutional right and must show the alleged deprivation was committed by a person "acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

---

[1] Defendants also argue that Wolfe cannot obtain punitive damages from the city and that the individual defendants are entitled to qualified immunity if Wolfe is suing them in their individual capacities. The complaint is clear that Wolfe is suing the defendants in their official capacities only, and his brief does not argue otherwise. He also does not argue that punitive damages are available against the municipality, *see City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247 (1981), so I need not discuss these issues further.

4

A municipality may be held liable under § 1983 if the municipality, "under color of any statute, ordinance, regulation, custom, or usage of any State ..., subjected, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Section 1983 may impose liability upon a municipality when a municipal custom or policy resulted in the deprivation of a right protected by the constitution or federal law. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978).

The Supreme Court has recognized that a decision "to enter into and maintain certain intimate human relationships" is a form of freedom of association that "receives protection as a fundamental element of personal liberty." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). The Supreme Court explained that:

> [T]he constitutional shelter afforded such relationships reflects the realization that individuals draw much of their emotional enrichment from close ties with others. Protecting these relationships from unwarranted state interference therefore safeguards the ability independently to define one's identity that is central to any concept of liberty.

*Id*. at 619 (internal citations omitted). In *Roberts* the Court found it unnecessary to precisely identify every factor that would entitle such relationships to protection, but noted that "such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical

5

aspects of the relationship" are factors that may define such relationships. *Id*. at 619, 620. Later, in *Lawrence v. Texas*, 539 U.S. 558 (2003), the Supreme Court further explained that "the State is not omnipresent in the home… Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct." *Id.* at 562.

The Eighth Circuit has not clearly delineated the scope of protection for a law enforcement officer's sexual relationships with a fellow officer or others with whom the officer has a professional relationship. In *Sylvester v. Fogley*, 465 F.3d 851, 858 n.6 (8th Cir. 2006), the court noted that under *Lawrence* "police officers generally have a right of privacy in their private sexual relations," but also noted that the standard for considering a police force's interest in regulating such relationships was not clear. *Id.* at 858 n. 6. In that case the Court recognized that the police department had a compelling interest – for many legitimate law enforcement purposes – in disciplining a police officer who had a sexual relationship with a crime victim and lied about it. *See also Vieira v. Presley,* 988 F.2d 850, 852-53 (8th Cir. 1993) (friendships and acquaintances are not the type of intimate relationship that *Roberts* recognized as warranting protection).

Some other circuits have ruled more definitively on this issue. For example, the Eleventh Circuit has explicitly recognized that "dating is a type of association which must be protected by the first amendment's freedom of association." *Wilson*

6

*v. Taylor*, 733 F.2d 1539, 1544 (11th Cir. 1984), *abrogated on other grounds as noted in Scala v. City of Winter Park*, 116 F.3d 1396, 1402 (11th Cir. 1997). The Ninth Circuit explicitly recognized that a police officer has a privacy interest in private sexual activities and that these "activities are within the zone protected by the constitution." *Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983); *but see Perez v. City of Roseville*, No. 15-16430, 2019 WL 2182488 at * 6 (9th Cir. May 21, 2019) (holding that officials were entitled to qualified immunity and noting that *Thorne* "explicitly rejected a per se rule that a police department can never consider its employees' sexual relationships.") The Sixth Circuit found, "at least for summary judgment purposes," that a police officer's relationship with an administrative employee of the police department was within the range of intimate associations recognized by *Roberts*, but then concluded that the city's interests in avoiding conflict in the workplace outweighed the officer's rights. *Anderson v. City of LaVergne*, 371 F.3d 879, 882-83 (6th Cir. 2004).

The Fifth and Tenth Circuits have reached different results. In *Coker v. Whittington*, 858 F.3d 304 (5th Cir. 2017), the Fifth Circuit affirmed the denial of relief for deputy sheriffs who had been terminated after they each moved in with the other's wife. The Court considered the County's interest in avoiding "internal dissension within the force" and stated that the relationships might be used adversely in litigation concerning the deputies' official conduct. It also stated,

7

"There are no decisions … suggesting that the deputies … have constitutional rights to 'associate' with each other's spouses before formal divorce." *Id.* at 306. In *Seegmiller v. LaVerkin City*, 528 F.3d 762, 772 (10th Cir. 2008), the Tenth Circuit held that a police officer had no fundamental liberty interest in engaging in sexual activity with a fellow officer while on a work-related trip.

Closer to home, this Court in *Wieland v. City of Arnold* declined to rule that "all dating relationships are Constitutionally protected," but concluded that a police officer's relationship with a convicted felon who was on probation was entitled to "some degree" of protection. 100 F. Supp. 2d 984, 988 (E.D. Mo. 2000). That case held that the City had proven that it had a legitimate concern that the relationship could undermine the authority of law enforcement officers, interfere with the chain of command, and adversely affect the public image of the department.

Most of the cases cited above that found no constitutional protection were based – at least in part – on weighing the police officer's right to an intimate relationship against the interests of the governmental authority. As pointed out in *Sylvester*, the exact amount of scrutiny that should be applied has varied greatly among the decisions. Defendants here urge me to apply the balancing test from *Pickering v. Board of Educ.*, 391 U.S. 563 (1968), as another judge of this Court did in *Weiland*. I am not sure that is the correct test, but I need not decide that at

8

this time. The cases relied on by defendants and cited above were cases considered on a full factual record, rather than on a motion to dismiss. Plaintiff's complaint here carefully avoided making any allegations about the interests of the City. I will not go outside the pleadings in deciding this motion to dismiss, especially because any application of a balancing test – whatever standard is applied – requires a factual record, both about the scope of the relationship and about the interests of the governmental authority.

Wolfe has sufficiently alleged that his relationship with the other officer is entitled to some level of constitutional protection, and he has stated a plausible claim that his First Amendment rights were violated. I also conclude that Wolfe has sufficiently alleged a claim for municipal liability, because the Board of Aldermen affirmed the discipline when he appealed it under the City's procedures.

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id*. at 481. A policy can include a statement, ordinance, regulation, or decision adopted and promulgated by the municipality's governing body. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988). A plaintiff must demonstrate

9

that an official policy was a deliberate choice made by the municipal official who has final authority over such matters and that the policy decision was the reason behind a constitutional violation. *Marsh v. Phelps Cty.*, 902 F.3d 745, 752 (8th Cir. 2018) (*citing Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999)).

Wolfe alleges that the decision made by the Board of Alderman when he exercised his right to appeal under the Town and Country Municipal Code constitutes the official government policy of the city. *Id*. at ¶ 25. The allegations of the complaint are sufficient to allege that his demotion was a deliberate and official policy choice made by those with final authority. *See Angarita v. St. Louis Cty.,* 981 F.2d 1537, 1547 (8th Cir. 1992). Wolfe has sufficiently alleged a basis for imposing municipal liability. Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss Case [16] is denied, but plaintiff's claim for punitive damages is stricken.

**IT IS FURTHER ORDERED** that defendants' motions to substitute parties [23, 24, 25, 26] are granted.

**IT IS FURTHER ORDERED** that defendants shall answer the complaint in the time allotted by the Federal Rules of Civil Procedure.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 24th day of June, 2019.