UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JEFFREY WOLFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17 CV 2942 CDP |
| | ) |
| THE CITY OF TOWN AND COUNTRY, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

Plaintiff Jeffrey Wolfe worked as a police officer for the City of Town and Country Police Department for more than 26 years.  In 2017 he was demoted from sergeant to corporal after the department determined that his consensual intimate relationship with another officer interfered with the operations of the police department.  He brings this suit under 42 U.S.C. § 1983, alleging that the demotion violated his First Amendment right of intimate association and his right to privacy. In addition to suing the City of Town and Country, Wolfe names the City's Mayor, members of the Board of Aldermen, and the Chief of Police, all in their official capacities.

The record in the case shows that there are no genuine disputes of material fact, and that Defendants are entitled to summary judgment.  Defendants had legitimate governmental interest in maintaining an orderly, efficient, and fair

police department.  The decision to demote Wolfe is rationally related to that interest.

## Evidentiary Issues

Defendants filed a lengthy and detailed statement of supposedly undisputed facts in support of their motion for summary judgment.  Wolfe objected to almost all of those statements; most objections were that documents supporting those statements were not authenticated or that the facts were hearsay or irrelevant.  He also moved to strike almost all of the documentary exhibits.[1]  Because both sides have provided only very limited amounts of deposition testimony, in the absence of those exhibits, most of defendants' statements of fact would be unsupported.

In response to Wolfe's motion to strike, defendants belatedly filed affidavits authenticating the exhibits as business records.  They also argued that Wolfe's hearsay objections are without basis because the statements are introduced not to prove the truth of the matters asserted, but to show the motivations for their actions.

 I will deny Wolfe's motion to strike.  "A motion to strike is properly directed only to material contained in pleadings." *Khamis v. Bd. of Regents, S.E.*

---

[1] Wolfe repeatedly objected to facts that he himself alleged in his complaint and then moved to strike at least one exhibit that he attached to his complaint.  See Wolfe's objections to Defendants' statements of fact 72 through 80 (ECF 63 at p. 29-33), which are essentially the very facts alleged in Wolfe's complaint ¶¶ 16-19 (ECF 1) and Defendants' Exhibit K (ECF 59-12) which is the same as Wolfe's complaint Exhibit 2 (ECF 1-2).  Similarly, Wolfe seeks to strike Defendants' Exhibit Q (ECF 59-18), which is the same as Wolfe's complaint Exhibit 3 (ECF 1-3).

*Mo. State Univ.*, No. 1:09-CV-145-RWS, 2010 WL 1936228, at *1 (E.D. Mo. May 13, 2013) (quoting *Mecklenburg Farm, Inc. v. Anheuser-Busch, Inc.*, No. 4:07-CV-1719-CAS, 2008 WL 2518561, at *1 (E.D. Mo. June 19, 2008)); *see also* Fed. R. Civ. P. 12(f). Defendants' statements of facts and exhibits are not pleadings. *See* Fed. R. Civ. P. 7(a); *see also Milk Drivers Local Union No. 387 v. Roberts Dairy*, 219 F.R.D. 151, 152 (S.D. Iowa 2003).

The late filed affidavits sufficiently show that the challenged documents are business records. *See DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach*, 576 F.3d 820, 826 (8th Cir. 2009) ("The district court has broad discretion in permitting supplementation of the summary judgment record[.]"). And, as in every employment case, evidence that might otherwise be hearsay is admissible non-hearsay when introduced to show why defendants took the actions they took.

Nevertheless, in ruling on Defendants' motion for summary judgment, I have only considered relevant evidence which clearly could be presented at trial in admissible form. See *Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) ("[T]he standard is not whether the evidence at the summary judgment stage would be admissible at trial—it is whether it *could* be presented at trial in an admissible form.").

## Background

Wolfe began working for the Police Department for the City of Town and Country, Missouri, in 1991.  In 2012 he was promoted to the rank of sergeant which involved, among other things, supervising a patrol unit.  In 2016 and early 2017 one of the patrol officers he supervised was Lauren Becker, who became his wife after this lawsuit was filed.  Wolfe was demoted from sergeant to corporal in April of 2017 following an investigation into his relationship with Becker and after a determination by the personnel committee that the demotion was "in the best interest of the department so as not to impair the efficiency of the department" after considering "the ramifications of [Wolfe's] admission of a 'sexual' relationship involving a former direct subordinate officer."  ECF 59-17.  The department had no policy prohibiting dating among officers, but the "Unbecoming Conduct" policy included conduct that "impairs the operation or efficiency of the Department or officer."  ECF 1-1.

In 2016 Wolfe's ex-girlfriend told another employee that Wolfe and Becker were involved romantically.  At that time, and until sometime in early 2017, Wolfe was a sergeant who directly supervised Becker, a patrol officer.  The 2016 investigation was closed as unfounded after Wolfe denied any relationship beyond ordinary friendship and the ex-girlfriend recanted her previous statements.

In March of 2017 Chief of Police Patrick Kranz reopened the investigation. He testified that throughout 2016 and the first part of 2017 there had been continuing rumors, innuendos, and comments that Wolfe and Becker were involved in a romantic or intimate relationship, and he reopened the investigation after he heard a rumor that they were planning a vacation together and determined that they had requested overlapping vacation days. Krantz directed Detective Sergeant Walker to investigate. Krantz's March 21, 2017 memorandum to Walker, ECF 59-4, listed the following items leading to the request:

> Continuous repeated comments and information from both the WCDC staff and Patrol Unit of a continuing inappropriate relationship between Sgt. Wolfe and Off. Becker;
> Information regarding favoritism shown to Off. Becker by Sgt. Wolfe reference patrol sector assignments, more specifically pre-completion of duty rosters by Sgt. Wolfe prior to his days off, giving Off. Becker the "at large" assignment, thus removing his Corporal's discretion to make the assignments;
> Information disseminated during my Communications Audit interview with Jan Mirikitani regarding the inappropriate relationship;
> Comments from a retired officer about a planned vacation involving both Sgt. Wolfe and Off. Becker scheduled for later this year.

Sgt. Walker interviewed several officers who reported rumors to him similar to the things listed in Chief Krantz's memo. On March 24, Walker interviewed Wolfe, who denied having a romantic or physical relationship with Becker and denied that they had planned a vacation together. Wolfe also stated that he did not believe any policy would prohibit a relationship or their marriage. Shortly thereafter Chief Krantz told Wolfe that if he and Becker did have an intimate

relationship or get married, steps would have to be taken to minimize his supervisory influence.  He then told Wolfe that he would be suspended with pay during the remainder of the investigation, and that the next step of the investigation would be a polygraph examination.[2]

On April 10, two days before the polygraph examination was scheduled, Wolfe asked if he and Becker could meet with Chief Kranz.  They met at a restaurant, where they discussed the department's concerns with officers being involved in intimate relationships, including the perception of preferential treatment, the possibility of sexual harassment lawsuits if the relationship deteriorated, the problems of a small department having to always be sure the officers were assigned to different shifts, and the problems if one wished to be promoted.  They also discussed that perceptions of favoritism towards Becker could cause her alienation from other officers, which could be dangerous in a situation where she needed backup.  Wolfe told Krantz that he and Becker had developed a friendship and had considered dating but had avoided it, but that he did not think there should be a problem once he was no longer her supervisor.  He denied that they had begun dating or having an intimate relationship at the time of the April 10 meeting.

---

[2] The exact date when Wolfe stopped supervising Becker is not clear from the record presented, but by the time of his April demotion he was no longer her supervisor.

The polygraph examination took place on April 12, 2017. Krantz had directed the polygraph examiner to focus on whether Wolfe and Becker had been engaged in an emotional or sexual relationship and whether they had planned a vacation together. As is customary, the polygraph examiner conducted a pre-polygraph interview. In addition to questions intended to help determine whether there were any physical or medical reasons Wolfe could not submit to the polygraph, the examiner told Wolfe the questions he had been asked to focus on. Wolfe denied that the relationship had become emotional or sexual as of that date. He later amended his comments and said that the relationship had escalated to a sexual relationship about three weeks earlier. Later in the pre-polygraph interview he said a more precise estimate would be four weeks ago.

Based on the interview, during the polygraph examination itself the examiner asked: "Prior to about four weeks ago, did you ever have physical sexual contact with Lauren?" Wolfe answered "no." After administration of the test, the examiner informed Wolfe that it was his opinion that he had been truthful in the exam.

Wolfe immediately went to Kranz's office and said that the polygraph examiner had said he had "passed." The polygraph examiner then asked to speak to Kranz, and told him of the specific question asked, including the time frame

limitation, and told him the time frame limitation had been specific because Wolfe had admitted that their sexual relationship had begun around four weeks earlier.

Based on this information, Chief Kranz believed that it was appropriate to refer the matter to a personnel committee for a recommendation regarding possible administrative actions. A Personnel Committee of four officers was formed according to the department policy for investigations, and that committee unanimously recommended that Wolfe be demoted to corporal "so as not to impair the efficiency of the department." ECF 59-17. Krantz accepted the recommendation and notified Wolfe that he would be demoted to corporal. Wolfe then appealed the denial to the Board of Aldermen, which affirmed the decision.

## Discussion

In the complaint, Wolfe names as defendants the City of Town and Country, the individual members of the Board of Aldermen, the Mayor, and the Chief of Police. All individual defendants are sued in their official capacities only. As succinctly stated in Wolfe's response to the motion for summary judgment:

> Plaintiff's Complaint alleges only one cause of action – violation of 28 U.S.C. § 1983. Plaintiff alleges he was demoted because of his off-duty association with another officer, causing him to be deprived of his right to Freedom of Association guaranteed by the First Amendment of the Constitution and his right to privacy to make certain fundamental decisions in matters of sexual and/or familial relationships without government interference.

ECF 62, p. 1-2.

A municipality may be liable under § 1983 if a municipal custom or policy resulted in the deprivation of a right protected by the constitution or federal law. *Monell v. Dep't of So c. Servs. of City of New York,* 436 U.S. 658, 690 (1978). "[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). "If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government 'policy' as that term is commonly understood." *Id.* at 481. A policy can include a statement, ordinance, regulation, or decision adopted and promulgated by the municipality's governing body. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988).

Defendants agree that the decision made by the Board of Aldermen when Wolfe exercised his right to appeal under the Town and Country Municipal Code constitutes the official government policy of the city. However, they argue that they are entitled to summary judgment because they are entitled to qualified immunity and their actions are rationally related to legitimate governmental interests.

A. <u>Summary Judgment Standard</u>

Summary judgment must be granted when the pleadings and proffer of evidence demonstrate that no genuine issue of material fact exists and that the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). I must view the evidence in the light most favorable to the nonmoving party and accord him the benefit of all reasonable inferences. *Scott v. Harris,* 550 U.S. 372, 379 (2007). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986); *Celotex Corp.*, 477 U.S. at 322. Where sufficient evidence exists to support a factual dispute, a jury must resolve the differing versions of truth at trial. *Anderson*, 477 U.S. at 248-49.

B. Qualified Immunity

The parties spend an inordinate amount of time in their briefs arguing about qualified immunity, which, as I stated in my ruling on the motion to dismiss, has no applicability here. ECF 28, p. 4, ftnt.1. Wolfe names as defendants the City of Town and Country and several individuals whom he sues in their *official* capacity only. Qualified immunity protects individuals who are sued in their *individual* capacity for money damages under § 1983. Qualified immunity "is not a defense available to governmental entities, but only to government employees sued in their individual capacity." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th

- 10 -

Cir. 1999). As the parties repeatedly recognize in their pleadings and their briefs, when individuals are sued only in their official capacities that is the equivalent of suing the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

In *Webb v. City of Maplewood*, the Court explained that a municipality is not absolved from liability for its own constitutional violations merely because individual actors might be entitled to immunity. 839 F.3d 483, 486 (8th Cir. 2018). To hold otherwise would eviscerate the whole concept of *Monell* municipal liability. The Court of Appeals in *Webb* stated:

> But even if we accepted the City's premise that its officials all enjoy personal immunity from suit, it hardly follows that they did not engage in any unlawful acts or that the City is thereby immune as well. Whether the challenged acts occurred, whether they were unlawful, and whether the City is liable for them under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), would still be open questions. We have long held for that reason that a municipality may be held liable for its unconstitutional policy or custom even when no official has been found personally liable for his conduct under the policy or custom.

*Id.* (internal citations omitted). *See also Sample v. City of Woodbury*, 836 F.3d 913, 917 (8th Cir. 2016) (municipality can still be liable even if individuals had absolute immunity). There "need not be a finding that a municipal employee is liable in his or her individual capacity before municipal liability can attach." *Moyle v. Anderson*, 571 F.3d 814, 818 (8th Cir. 2009). Cases like *Muir v. Decatur County, Iowa,* 917 F.3d 1050 (8th Cir. 2019), relied on by both parties, merely held

- 11 -

that the municipality could not be liable because there was no underlying constitutional violation at all, not because of any immunities of the individuals.

C. Applicable Legal Standard

The parties next dispute what standard of review should apply to Defendants' demotion of Wolfe. Defendants argue that their actions should be reviewed under the rational basis standard, while Wolfe argues they should be reviewed with strict scrutiny.

The Supreme Court has recognized that a decision "to enter into and maintain certain intimate human relationships" is a form of freedom of association that "receives protection as a fundamental element of personal liberty." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). In *Lawrence v. Texas*, the Court further explained "the State is not omnipresent in the home . . . . Liberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct." 539 U.S. 558, 562 (2003).

The Eighth Circuit has not yet clarified the scope of protection for a law enforcement officer's sexual or dating relationship with another officer. In *Sylvester v. Fogley*, the Eighth Circuit recognized that police officers generally have a right of privacy in their private sexual relations but did not explain the exact contours of that right. 465 F.3d 851, 858 n.6 (8th Cir. 2006). The court noted that the Supreme Court in *Kelley v. Johnson*, 425 U.S. 238, 240-41 (1976), applied

rational basis review to uphold a police department's grooming regulations against a right of privacy claim. *Sylvester*, 465 F.3d at 858 n.7. But the Eighth Circuit decided to "err on the safe side by applying strict scrutiny" in *Sylvester* because the defendant police department's discipline of an officer who had sex with a crime victim and lied about it would satisfy both strict scrutiny and rational basis review. *Id.*

Other courts have also recognized that police officers have a right of privacy in their private sexual relations but have not applied a uniform standard of review. The Ninth Circuit appears to be the only circuit court to apply heightened scrutiny to a similar claim. In *Thorne v. City of El Segundo*, the court applied heightened scrutiny to the plaintiff's claim that a police department violated her right to privacy by asking her extensive questions about her sexual history and prior miscarriage during her job application. 726 F.2d 459, 470 (9th Cir. 1983). However, a few years later, the Ninth Circuit distinguished *Thorne* from cases involving on-duty conduct that could affect job performance and applied rational basis review to a police department's discipline of officers who had sex with paid informants while on the job. *Fugate v. Phoenix Civil Service Bd.*, 791 F.2d 736, 741-42 (9th Cir. 1986). Other courts have also applied rational basis review to police officers' intimate association and right to privacy claims. *See Sylvester*, 465

- 13 -

F.3d at 858 n. 6 (collecting cases); *Coker v. Whittington*, 858 F.3d 304, 306-07 (2017).

I likewise find that rational basis review is the proper standard of review on the facts of this case. "Regulations limiting even those rights guaranteed by the explicit language of the Bill of Rights are reviewed more deferentially when applied to certain public employees than when applied to ordinary citizens." *Crain v. Bd. of Police Comm'rs of Metro. Police Dept. of City of St. Louis*, 920 F.2d 1402, 1408 (8th Cir. 1990) (collecting cases); *see also Kelley*, 425 U.S. at 244-45. And, "[b]ecause police departments function as paramilitary organizations charged with maintaining public safety and order, they are given more latitude in decisions regarding discipline and personnel regulations than an ordinary government employer." *Tindle v. Caudell*, 56 F.3d 966, 971-72 (1995) (citing *Crain*, 920 F.2d at 1409); *see also Tyler v. City of Mountain Home, Ark.*, 72 F.3d 568, 570 (1995) ("a police department has a more significant interest than the typical government employer in regulating the speech activities of its employees in order 'to promote efficiency, foster loyalty and obedience to superior officers, maintain morale, and instill public confidence.' ") (quoting *Shands v. City of Kennett*, 933 F.2d 1337, 1344 (8th Cir. 1993)); *Wieland v. City of Arnold*, 100 F. Supp. 2d 984, 989 (E.D. Mo. 2000) (recognizing the latitude afforded to police departments in an intimate association and privacy challenge to police department regulation). Thus, the

Eighth Circuit has recognized "the rational relationship standard is the proper standard for review of police regulations." *Crain*, 920 F.2d at 1408-09 (citing *Vorbeck v. Schnicker*, 660 F.2d 1260, 1266 (8th Cir. 1981)).

Wolfe argues that this case is distinguishable from cases applying rational basis review to police departments' discipline of their officers because the police department did not have a specific fraternization policy prohibiting relationships with other officers. But Wolfe does not explain why that distinction would alter those courts' analyses. Those cases did not rely on the fact that a specific regulation pre-existed the conduct at issue. Rather, they recognized that the latitude afforded to a police department in discipline and personnel regulations stems from the police department's status as a subdivision of the state charged with maintaining public safety and order. *Kelley*, 425 U.S. at 247 ("choice of organization . . . for law enforcement personnel is a decision entitled to the same presumption of legislative validity as are state choices designed to promote other aims within the cognizance of the State's police power"); *Crain*, 920 F.2d at 1407; *Tyler*, 72 F.3d at 570; *Tindle*, 56 F.3d at 971. In *Fugate*, the Ninth Circuit relied on the same reasoning when applying rational basis review. 791 F.2d at 741-42 (regulation prohibiting "conduct unbecoming an officer" was entitled to

presumption of legislative validity because it was clearly intended to protect the legitimate interests of the department).[3]

Wolfe's argument that strict scrutiny should apply is also unavailing. He notes that the court in *Sylvester* did not preclude the application of strict scrutiny to the facts of this case. But he does not cite any court that has identified strict scrutiny as the appropriate standard of review for an intimate association or right to privacy challenge to a police department's discipline of an officer for his relationship with another officer. And he does not otherwise explain why strict scrutiny should apply to his claim.

This circuit's recognition of the wide latitude afforded to police department's regulation of personnel instead counsels in favor of rational basis review. Moreover, Wolfe's relationship with Becker is distinguishable from remote or off-duty conduct that does not affect job performance: the rumors and speculation within the department about his relationship and alleged preferential treatment of Becker show that the relationship was not purely private, and a romantic or dating relationship with another officer may harm department morale or functioning, as explained in more detail below. Thus, the relevant inquiry is

---

[3] In *Thorne*, the Ninth Circuit found that "an unbounded, standardless inquiry" into a job applicant's sexual history could not withstand heightened scrutiny, but it did not base its conclusion that heightened scrutiny should apply on the existence of a pre-existing policy. 726 F.2d at 470. *Fugate* distinguished cases involving on-the-job conduct affecting job performance, in which heightened scrutiny would apply, from cases that affected or could potentially affect job performance, in which rational basis review would apply. 791 F.2d at 741.

whether "there is no rational connection" between the challenged policy and the defendants' legitimate interests. *Crain*, 920 F.2d at 1409 (quoting *Kelley*, 425 U.S. at 247).

    D. <u>Application</u>

Defendants argue that the decision to investigate and demote Wolfe was rationally related to their legitimate interest in maintaining an orderly, safe, efficient, fair, and trustworthy police department. Specifically, they argue that Wolfe's relationship with Becker prevented both officers from being scheduled on the same day or shift and prevented Wolfe from serving on personnel or promotional committees when Becker might be impacted by the committee's determination. They also note the relationship could bias Wolfe or create the perception of bias or favoritism, alienate Becker from her fellow officers, threaten department morale and harmony if the relationship soured, and risk sexual harassment litigation against the department.

Defendants' interests are legitimate and well recognized. "[A] police department has a substantial interest in developing 'discipline, *esprit de corps*, and uniformity' within its ranks so as to insure the safety of persons and property." *Hughes v. Whitmer*, 714 F.2d 1407, 1419 (8th Cir. 1983) (quoting *Kelley*, 425 U.S. at 246). "The need for harmony and close working relationships between co-workers in a police department is of great importance." *Tindle*, 56 F.3d at 972.

And sexual relationships between officers may threaten department morale. *See Thorne*, 726 F.2d at 469 ("[S]exual relations among officers in a paramilitary organization such as a police department [may be] an appropriate matter of inquiry with respect to employment in light of their possible adverse effect on morale, assignments, and the command-subordinate relationship."). They also create the potential for sexual harassment suits. *See Anderson v. City of LaVergne*, 371 F.3d 879, 882 (6th Cir. 879) (upholding City policy that "barred dating relationships between police department employees of different ranks to promote its interest in avoiding sexual harassment suits" under rational basis review); *Parks v. City of Warner Robins, Georgia*, 43 F.3d 609, 615 (6th Cir. 1995) (upholding policy prohibiting inter-office dating as means of "decreasing the likelihood of sexual harassment in the workplace" under rational basis review).

Defendants' investigation and demotion of Wolfe are rationally related to those interests. The investigation was limited to determining the nature and extent of Wolfe's relationship with Becker after rumors about their relationship persisted in the department over several months. It did not otherwise probe into Wolfe's private, non-job-related sexual activity. Demoting Wolfe reduced his supervisory responsibilities over Becker and thus reduced the possibility of favoritism, alienation, disharmony, and sexual harassment litigation for the department.

Wolfe argues that Defendants' actions before and after demoting him cast doubt upon the legitimacy of Defendants' concerns. He notes that multiple witnesses testified that there were no issues with his or Becker's performance, morale in his department was reported to be high, he was no longer Becker's direct supervisor when he was demoted, and he continued to fulfill the duties of a supervisor for several months after his demotion. He also claims that the department responded to sexual harassment claims and conflicts of interest differently in the past.

But these facts do not controvert the legitimacy of the City's interests. Even if Wolfe's relationship with Becker had not yet disrupted department functioning, that does not ensure that it would not do so in the future. "A government employer's reasonable prediction of disruption is entitled to substantial weight. The governmental entity need not allow events to unfold to the extent that the disruption of the office and the destruction of working relationships is manifest before taking action." *Tindle*, 56 F.3d at 972 (quoting *Waters v. Chruchill*, 511 U.S. 661 (1994)). Even though Wolfe was no longer Becker's direct supervisor when he was demoted, the relationship could still have impeded his responsibilities on personnel and promotional committees. It could also create the potential for a future sexual harassment suit. And the fact that Defendants may have responded

differently to sexual harassment claims in the past does not impugn the legitimacy of their interest.

Because Defendants' actions are rationally related to its legitimate interest in preserving an orderly, safe, efficient, fair, and trustworthy police department, Defendants did not violate Wolfe's rights to intimate association and privacy. Thus, Defendants are entitled to judgment as a matter of law.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [57] is **GRANTED.**

**IT IS FURTHER ORDERED** that Wolfe's Motion to Strike [64] is **DENIED**.

A separate Judgment is entered herewith.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 20th day of April, 2022.